1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EUGENE MADSEN,<br><br>                              Petitioner,<br><br>     vs.<br><br><br><br>JOE MCGRATH, WARDEN,<br><br>                              Respondent. | CASE NO. 04cv1726 IEG (BLM)<br><br>**ORDER:**<br><br>**(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT; [Doc. No. 120]**<br><br>**(2) REJECTING THE PETITIONER'S OBJECTIONS; [Doc. No. 127]**<br><br>**(3) DENYING THE PETITION FOR HABEAS CORPUS; [Doc. No. 46] and**<br><br>**(4) DENYING CERTIFICATE OF APPEALABILITY.** |

Petitioner Richard Eugene Madsen ("petitioner"), a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his January, 1998 convictions for aggravated mayhem, assault, possession by a felon of a sharp instrument, and making a terrorist threat. (Doc. No. 1.)  This matter was referred to United States Magistrate Judge Barbara L. Major pursuant to 28 U.S.C. § 636(b)(1)(B).  On November 9, 2007, Magistrate Judge Major issued a Report and Recommendation ("Report") recommending the Court deny the petition.  (Doc. No. 120.) Petitioner filed objections to the Report on January 30, 2008.  (Doc. No. 127.)

Following de novo review of petitioner's claims, the Court finds Magistrate Judge Major's Report to be thorough, complete, and an accurate analysis of the legal issues presented in the petition. For the reasons explained below, the Court: (1) adopts in full Magistrate Judge Major's Report; (2) rejects the petitioner's objections; (3) denies the petition for writ of habeas corpus; and (4) denies a certificate of appealability.

BACKGROUND

State Proceedings

The Court hereby incorporates by reference the magistrate judge's accurate recitation of the facts as determined by the California Court of Appeal. (Report at 2-7.) As the magistrate judge correctly noted, the Court presumes state court findings of fact to be correct. 28 U.S.C. § 2254(e)(1). To summarize, petitioner was a prisoner in the George Bailey detention center when on April 24, 1997, a fellow inmate, Joseph Cornejo, was attacked. Before the attack, petitioner and two other inmates, Edward Bergman and Gilberto Espinoza, had been in the dayroom with Cornejo. After the attack, petitioner and the other two inmates were found in the upstairs shower area. Petitioner and Espinoza had sustained minor injuries. Two unaltered razors were found hidden in petitioner's mattress. Two days later, another inmate, Victor Solano, gave a correctional officer a "kite," or jailhouse letter, written by petitioner. The letter acknowledged petitioner "did him" and included a newspaper article about the Cornejo incident.

On June 2, 1997, a razor blade, apparently removed from a disposable razor, was found hidden in the spine of a legal pad in petitioner's cell. The legal pad was found inside an accordion folder and contained petitioner's handwriting. Other papers belonging to petitioner were also found in the folder. On June 23, 1997, petitioner threatened to kill a correctional officer, Deputy Sheriff Michael Bradburn, for refusing to postpone petitioner's shower time. Petitioner said he could get Bradburn when he was released or could have someone else "whack" him. When another correctional officer told petitioner Bradburn had filed a report, petitioner responded he wanted to apologize to Bradburn and "squash" the matter.

The jury found petitioner guilty of the four charged offenses and found the enhancement allegations to be true. The court then conducted a bifurcated trial on petitioner's prior convictions.

The jury found petitioner had previously been convicted of assault with a deadly weapon in 1984, and assault with a deadly weapon and personally inflicting great bodily injury in 1989.  Petitioner filed a motion for a new trial on multiple grounds, including juror misconduct and ineffective assistance of counsel.  The trial court denied the motion.  The court sentenced petitioner pursuant to California's three strikes law to consecutive terms of 25 years to life for each of counts two, three, and four.  After staying a term of 25 years to life on count one and adding enhancements of three years for infliction of great bodily injury and five years for each of the two serious felony prior convictions, the court imposed an aggregate term of eighty-eight years to life.

Petitioner appealed, contending the trial court erred by (1) denying his motion to substitute counsel, (2) denying his peremptory challenge of the trial judge, (3) denying his motion to sever the indictment's four counts, (4) denying his new trial motion based on juror misconduct, (5) admitting inflammatory gang evidence, (6) admitting evidence of his prior acts of possession of razors to establish his knowledge of the hidden razor blade, and (7) denying his motion to strike his 1984 prior conviction.  (Lodgment 3 at 1-2.)  He also argued he was denied effective assistance of counsel.  (Id. at 2.)  In an unpublished opinion dated November 28, 2000, the California Court of Appeal reversed and remanded for a new evidentiary hearing on the allegations of jury misconduct but denied the remaining grounds.  (Id.)  On remand, the trial court held an evidentiary hearing on juror misconduct at which petitioner presented no new evidence.  The court issued an amended order on March 21, 2002, again denying petitioner's motion for new trial.  (Lodgment 4.)  Petitioner appealed, and the Court of Appeal affirmed in a written order of November 6, 2003.  (Lodgment 5.)

Federal Procedural Background

Petitioner's case has a protracted procedural history in federal court, which the Court will only summarize briefly.  Petitioner filed a 438-page petition for writ of habeas corpus on August 29, 2005.  (Doc. No. 1.)  On June 29, 2005, the Court dismissed the petition for not presenting a short and plain statement of his entitlement to relief.  (Doc. No. 36.)  Petitioner filed an amended petition on September 15, 2005.  (Doc. No. 46.)  Petitioner then filed a motion for the Court to stay his amended petition while he sought to exhaust his unexhausted claims.  (Doc. No. 48.)  Before

1    that motion had been fully briefed, petitioner filed a motion requesting the Court proceed with his

2    claims on the merits due to the California Supreme Court's denial of his habeas petition.  (Doc.

3    No. 67.)  Accordingly, on February 1, 2006, Magistrate Judge Major denied the motion for stay

4    and abeyance as moot and ordered Respondent to respond to the petition.  (Doc. No. 70.)

5    Respondent moved to dismiss the petition on March 21, 2006.  (Doc. No. 80.)  The Court denied

6    the motion to dismiss on August 8, 2006 and ordered Respondent to answer the petition.  (Doc.

7    No. 88.)  After several extensions of time, Respondent filed an answer on March 16, 2007.  (Doc.

8    No. 97.)  Petitioner filed a traverse on June 26, 2007.  (Doc. Nos. 114, 116, & 118.)  In a Report

9    dated November 9, 2007, Magistrate Judge Major recommended the Court deny the petition in its

10   entirety.  (Doc. No. 120.)  Petitioner filed objections on January 30, 2008.  (Doc. No. 127.)

11                                                    DISCUSSION

12            The magistrate judge correctly identified the standard of review for a petition for writ of

13   habeas corpus under Section 2254.  For those claims raised by petitioner's appeal, the Court

14   analyzes the California Court of Appeal's decision as the "last reasoned decision" on the merits of

15   petitioner's case.  Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Medina v. Hornung, 386

16   F.3d 872, 877 (9th Cir. 2004).  For those claims presented only in the petition for writ of habeas

17   corpus to the California Supreme Court, the Court must conduct an independent review of the

18   record to determine whether the denial is contrary to, or an unreasonable application of, clearly

19   established Supreme Court law.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Finally,

20   the Court may only deny a petition with unexhausted claims on the merits if it is "perfectly clear"

21   the unexhausted claims are meritless.  Granberry v. Greer, 481 U.S. 129, 135 (1987).

22            A petition under 28 U.S.C. § 2254 can be granted only if the Court determines the

23   California courts decided petitioner's case in a manner that was either "contrary to, or involved an

24   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

25   of the United States," or "based on an unreasonable determination of the facts in light of the

26   evidence presented in the state court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529

27   U.S. 362, 403, 412-13 (2000).

28

Because petitioner has objected to the Report in its entirety, the Court reviews the Report de novo.  28 U.S.C. § 636(b)(1)(C); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004).  The petition is organized as presenting fourteen claims, but most of the claims present multiple distinct grounds, totaling thirty-two alleged constitutional violations.

1.     Right to Counsel:  Trial Court's Denial of Petitioner's Motion to Substitute New Counsel

Petitioner claims the trial court violated his Sixth Amendment right to counsel by denying his motion to appoint new counsel.

State Proceedings

At the eve of trial, petitioner requested retained counsel, Nicholas De Pento, be permitted to substitute for his public defender, Thomas Ulovec.  The trial court denied the ninety-day continuance of trial that would have been necessary to allow Mr. De Pento to familiarize himself with the case.  The California Court of Appeal rejected petitioner's claim that this was a violation of petitioner's Sixth Amendment right to retained counsel.  Petitioner had four months to retain counsel prior to his trial, and his failure to do so until the last court day before trial was apparently due to his parents' delay in agreeing to pay for counsel.  (Lodgment 3 at 10-11.)  The Court of Appeal found the trial court acted within its discretion.  The prosecution had concerns regarding witness safety because of threats made by petitioner, petitioner had planned to escape during transportation to the courthouse, and one witness was being housed in protective custody.  Accordingly, the substantial delay would have prejudiced the prosecution.

Magistrate Judge's Report

The Report correctly noted there is no controlling United States Supreme Court authority on the discretion of a trial court to deny substitution of counsel where the substitution would require delay.  (Report at 16.)  The Supreme Court has held trial courts have broad discretion in matters of continuances.  "We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar."  United States v. Gonzalez-Lopez, ___ U.S. ____, 126 S. Ct. 2557, 2565-66 (2006) (internal citations omitted).  In the Ninth Circuit, trial courts have wide discretion to deny substitution of counsel where the substitution would require a delay.  United States v. Prime, 431 F.3d 1147, 1155

1    (9th Cir. 2005).  The magistrate judge concluded the denial was thus not contrary to, or an

2    unreasonable application of, clearly established United States Supreme Court law and therefore

3    recommended this claim be denied.

4         Petitioner's Objections

5         Petitioner objects the trial court did not "make any analysis of its calendar as it related" to

6    the request for substitution.  The court did, however, consider the fairness to the prosecution and

7    the safety of witnesses.  Petitioner also objects the trial court erroneously believed the offense

8    occurred in 1987 and thus was extremely old.  (Objections at 5; Traverse at 46.)  The transcript

9    does reflect the court stated "When did this occur?  Back in '87."  (Lodgment 12 at 3.)  The

10   offenses actually took place in 1997.  The court's decision was nonetheless within its discretion

11   based upon the other considerations before the court, specifically, fairness and safety.  Finally,

12   petitioner argues he was at that time embroiled in a "toxic conflict" with his counsel and had

13   experienced a breakdown in communication.  The record reflects neither petitioner, appointed

14   counsel, nor retained counsel informed the court at that time of any such conflict.  (Id. at 1-3.)

15   Petitioner argues the court had a sua sponte duty to inquire as to the state of the relationship

16   between petitioner and his counsel under United States v. Walker, 915 F.2d 480, 483 (9th Cir.

17   1990) (overruled on other grounds).  In that case, appointed counsel informed the court his client

18   was no longer speaking to him and refused to assist counsel in his defense.  The trial court found

19   that because the attorney was legally competent to represent the defendant, the motion should be

20   denied, despite the complete breakdown of the attorney-client relationship.  Walker does not

21   support petitioner's argument that the court must sua sponte inquire of a defendant seeking

22   substitution of counsel whether the reason for the request is that the relationship has become toxic.

23   In the present case, the trial court took into consideration the statements made by petitioner, his

24   appointed attorney, and Mr. De Pento, as required by Walker.  (Lodgment 12 at 1-3.)

25        Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

26   petition as to this claim.

27   //

28   //

1    2.      Right to Counsel: Trial Court's *Marsden* Hearing and Hearings During Trial

2        Petitioner claims his Sixth Amendment right to counsel was violated when the trial court

3    failed to conduct an adequate inquiry into his complaints about his attorney in his Marsden hearing

4    and during other closed hearings during trial.

5        State Court Proceedings

6        The trial court held a Marsden hearing on January 12, 1998, prior to the beginning of trial.

7    Petitioner requested a new attorney at the hearing because his counsel was not conducting the

8    investigation of the trial as he had requested.  (Lodgment No. 13 at 7-21.)  Thomas Ulovec,

9    petitioner's appointed counsel, addressed petitioner's concerns at the hearing.  He stated he had

10   hired an investigator, interviewed witnesses where available, made tactical decisions as to the

11   effectiveness of each witness, and considered petitioner's proposed trial strategies concerning

12   background checks and photographs.  The court thus denied petitioner's motion.  (Id. at 21.)

13   Petitioner never stated he was unable to communicate with his attorney, although the court asked

14   him several times if had any other complaints.  (Id.)

15       The court held three other hearings during trial, on January 16, 20, and 22 of 1998.  On

16   January 16, petitioner informed the court he believed Ulovec had not adequately investigated

17   Deputy Bradburn's background.  (Lodgment 13 at 334.)  Petitioner summarized his complaint for

18   the court as follows: "I just felt all these things, you know, should have been brought up and

19   should have been checked by us, you know, and that's my concern there."  (Id. at 338.)  Ulovec

20   then explained why the information regarding Bradburn's background was irrelevant and

21   unavailable.  (Id. at 338-39.)  The court again concluded the disagreement was merely over tactical

22   decisions, and petitioner indicated he would raise the matter again in the future.  (Id. at 341.)  On

23   January 20, petitioner again raised his concerns before the state court.  (Id. at 470.)  He explained

24   to the court how he felt a good attorney would have handled Bradburn as a witness.  On January

25   22, petitioner told the court he felt Ulovec should have filed a motion regarding the loss of the

26   razor blade and should have requested a third party culpability instruction.  (Id. at 648.)

27       Petitioner did not raise these issues in his state court appeal.  He presented them in his

28   petition for habeas review by the California Supreme Court, which was silently denied.

1   Accordingly, as the magistrate judge correctly noted, the Court must conduct an independent

2   review of the record to determine whether the denial is contrary to, or an unreasonable application

3   of, clearly established Supreme Court law.   Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

4   2003).

5            Magistrate Judge's Report

6            The magistrate judge correctly identified the clearly-established law regarding the Sixth

7   Amendment right to counsel.  A state court may not summarily deny defendant's motion for new

8   counsel without further inquiry.  Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982).  A lawyer

9   may make tactical decisions even in the face of his client's explicit disapproval.  Brookhart v.

10  Janis, 384 U.S. 1, 8 (1966); see also Faretta v. California, 422 U.S. 806, 820 (1975) ("[L]aw and

11  tradition may allocate to the counsel the power to make binding decisions of trial strategy in many

12  areas.").  Applying these principles, the magistrate judge concluded the trial court did not err in

13  denying petitioner's motion for new counsel by inquiring into the reasons for petitioner's motion

14  and, upon learning those reasons were disagreements over trial strategy properly within the scope

15  of counsel's control, denying the motion.

16           Petitioner's Objections

17           In his objections, petitioner continues to assert Ulovec should have followed petitioner's

18  proposed trial strategies.  (Objections Part One at 9-12.)  The Court will later address petitioner's

19  claims Ulovec's failure to adopt those strategies rendered his assistance ineffective.  Here,

20  petitioner claims the trial court should have granted his motion for new counsel based on the toxic

21  relationship between petitioner and Ulovec.  Petitioner was given the opportunity to exhaustively

22  detail his disagreements with Ulovec over strategy.  Because none of those disagreements

23  indicated a "toxic relationship," the court appropriately denied petitioner's request for substitution.

24  Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007) ("An irreconcilable conflict in violation of

25  the Sixth Amendment occurs only where there is a complete breakdown in communication

26  between the attorney and client, and the breakdown prevents effective assistance of counsel.").

27  //

28

1    Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

2    petition as to this claim.

3    <u>3.</u>        <u>Ineffective Assistance of Counsel Due to Conflict of Interest</u>

4    Petitioner also claims a conflict of interest existed due to trial counsel's prior

5    representation of an individual inmate who petitioner believes could have been a defense witness.

6         <u>State Court Proceedings</u>

7    Petitioner did not raise this alleged conflict during his numerous opportunities at trial.

8    Petitioner claims he informed his attorney D.J. Bratton would be a witness for the defense.  Ulovec

9    apparently represented Bratton prior to his representation of petitioner.  During his <u>Marsden</u>

10   hearing, petitioner methodically listed his grievances with Ulovec's representation, including the

11   names of many witnesses for the defense that Ulovec had not interviewed, but petitioner did not

12   mention Bratton.  (Lodgment 13.)  Petitioner did not raise this claim in his appeal, but did present

13   it to the California Supreme Court in his petition for writ of habeas corpus.

14        <u>Magistrate Judge's Report</u>

15   The magistrate judge correctly identified the clearly-established Supreme Court law as

16   articulated in <u>Burger v. Kemp</u>, 483 U.S. 776, 783 (1987).  Petitioner must show Ulovec actively

17   represented conflicting interests, and that this conflict adversely affected his performance.  <u>Id.</u>  The

18   magistrate judge concluded that there was no evidence Ulovec was aware Bratton could be a

19   witness, no evidence Bratton knew or could testify to anything relevant, and no evidence Ulovec

20   chose not to put Bratton on the stand due to his representation of Bratton.  The magistrate judge

21   recommended the Court deny the petition because petitioner has not met his burden of establishing

22   prejudice.

23        <u>Petitioner's Objections</u>

24   Petitioner argues his claim should succeed because Ulovec has not presented an affidavit

25   contradicting petitioner's contention Ulovec decided not to call Bratton as a witness due to a

26   conflict of interest.  (Objections Pt. One at 12-14.)  Because the burden is on petitioner to show

27   prejudice, the Court rejects this argument.  <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980) (stating a

28   "possibility of conflict is insufficient to impugn a criminal conviction"); <u>Hovey v. Ayers</u>, 458 F.3d

1  892, 908 (9th Cir. 2006) ("To show an actual conflict resulting in an adverse effect, [petitioner]

2  must demonstrate 'that some plausible alternative defense strategy or tactic might have been

3  pursued but was not and that the alternative defense was inherently in conflict with or not

4  undertaken due to the attorney's other loyalties or interests.'") (internal citation omitted).

5      Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

6  petition as to this claim.

7  <u>4.</u>     <u>Due Process of Law: Trial Court's Denial of Peremptory Challenge</u>

8      Petitioner claims the trial court improperly denied his peremptory challenge of Judge

9  Vargas, the Superior Court judge at his trial, under California Code of Civil Procedure Section

10  170.6. The court denied the writ as untimely. Petitioner did not appeal.

11     <u>Magistrate Judge's Report</u>

12     The magistrate judge found the claim had not been exhausted, but could nonetheless be

13  considered because it is "perfectly clear" it is without merit. <u>Cassett</u>, 406 F.3d at 623-24. The

14  magistrate judge correctly found that to the extent petitioner claims the denial of his writ was

15  contrary to state law, petitioner does not present a federal claim. <u>Estelle v. McGuire</u>, 502 U.S. 62,

16  68 (1991) (federal habeas relief does not lie for errors of state law). Petitioner also claims the

17  denial of the writ was a denial of due process. But, as the magistrate judge correctly noted,

18  petitioner has presented no evidence Judge Vargas was biased, and thus has not shown his trial

19  was fundamentally unfair in violation of the Due Process Clause.

20     <u>Petitioner's Objections</u>

21      Petitioner first objects that this claim is exhausted. (Objections Pt. 1 at 15.) The Court has

22  carefully reviewed petitioner's 265-page petition for writ of habeas corpus to the California

23  Supreme Court. (Lodgment 11.) While petitioner did allege the failure to appeal the denial of the

24  writ constituted ineffective assistance of counsel, he did not argue the trial court's denial of the

25  writ deprived him of due process of law. (<u>Id.</u> at 107-113.) Accordingly, this claim was not

26  presented to any state court and is unexhausted.

27      Substantively, petitioner objects that under <u>Hicks v. Oklahoma</u>, 447 U.S. 343 (1980), a

28  state's failure to follow its own procedural laws constitutes a denial of due process. In that case,

the Court held that the state procedural law at issue, providing a right to sentencing by jury, had created a "substantial and legitimate expectation that [a defendant] will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion." Id. at 345.  In Hicks, the violation of state law was also a violation of due process.  Petitioner incorrectly argues that all violations of state law thus violate due process.  Under Estelle, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." 502 U.S. at 68.  In this case, petitioner has not shown or claimed any prejudice resulting from the state court's denial of his peremptory challenge.  Accordingly, petitioner's due process rights were not violated by Judge Vargas presiding over petitioner's trial.

The Court therefore rejects petitioner's objections, adopts the Report, and denies the petition as to this claim.

5.   Ineffective Assistance of Counsel: Failing to Appeal the Denial of Peremptory Challenge

Petitioner alleges Ulovec's failure to appeal the denial of his peremptory challenge of Judge Vargas constituted ineffective assistance of counsel.

State Court Proceedings

While petitioner did not raise this claim in his appeal, he raised it in his petition for writ of habeas corpus to the California Supreme Court, which the court silently denied.

Magistrate Judge's Report

Because the magistrate judge found petitioner had not shown prejudice stemming from the trial by Judge Vargas, the Report recommended the Court also deny the petition on this ground.

Petitioner's Objections

Petitioner states prejudice is shown by his eighty-eight years to life sentence.  (Objections Pt. 1 at 18.)  Petitioner also argues he does not need to establish prejudice because petitioner's constitutional right to a different judge cannot be waived by counsel.  (Id.)  Petitioner relies on Anders v. California, 386 U.S. 738 (1967), in which the Court held an attorney appointed for an appeal could not merely file a letter brief stating a criminal defendant had no grounds to appeal.

Id. at 745.  The defendant in that case had a valid constitutional claim.  No cases, however, support petitioner's view the Constitution provides a right to a peremptory challenge of a judge.  Thus, the Court agrees with the magistrate judge that petitioner must show prejudice under Strickland v. Washington, 466 U.S. 668 (1984).  Because there is no reason to think petitioner would not have received such a lengthy sentence before another judge, petitioner has not shown prejudice.  Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the petition as to this claim.

6.      Due Process of Law: Improper Joinder of Counts

Petitioner claims his due process rights were violated by the joinder of counts one and two, concerning the attack on Cornejo, with count three, possession of a sharp object, and count four, the threat against Deputy Bradburn.

State Court Proceedings

The California Court of Appeal rejected petitioner's claim.  The court found petitioner could not show prejudice in the form of a reasonably probability he "would have received a more favorable result had the charged offenses been separately tried."  (Lodgment 3 at 16.)  The court held that some of the evidence on the various counts was cross-admissible.  It also found the evidence on all four counts was strong, so it was unlikely any of the evidence had an "spillover effect" and improperly influenced the jury on the other counts.

Magistrate Judge's Report

The magistrate judge correctly identified the clearly-established United States Supreme Court law.  Under United States v. Lane, 474 U.S. 438 (1986) "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder 'rises to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his [constitutional] right to a fair trial.'"  Id. at 449 (citations omitted).  The magistrate judge concluded petitioner has not shown fundamental unfairness with his conclusory claims about the "spillover effects" of the evidence on the separate counts.

//

//

1          Petitioner's Objections

2          Petitioner claims the evidence on different counts impermissibly influenced the jury.

3  Petitioner's objections rely on his other claims that (1) evidence was improperly admitted, (2) the

4  evidence on count three was insufficient to support a conviction, and (3) the jury instructions were

5  erroneous and confusing.  (Objections Pt. 1 at 20-23.)  These specific claims are denied infra.

6  Because, as the magistrate judge correctly noted, much of the evidence on the different counts was

7  cross-admissible, and the judge gave the jury limiting instructions and instructed the jury to

8  consider each count separately, petitioner has not shown joinder rendered his trial fundamentally

9  unfair.  Cf. Bean v. Calderon, 163 F.3d 1073, 1083 (9th Cir. 1998) (reversing conviction for

10  misjoinder where weak and strong charges were joined together, evidence was not cross-

11  admissible, prosecution emphasized similarity of the offenses, and court gave instructions applying

12  only to one offense without specifying the limitation).

13          Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

14  petition as to this claim.

15  7.          Ineffective Assistance of Counsel:  Failure to Call Certain Witnesses

16          Petitioner claims trial counsel was ineffective in failing to interview and present the

17  testimony of eight witnesses: William Berger, "Mr. Viezaga,"[1] Dennis Bratton, Greg Jennings,

18  Jesse Provencio, Juan Gonzalez, Linda Provencio, and Leslie Bowers.  Petitioner claims Berger

19  would have testified he did not see petitioner enter Cornejo's cell.  Bratton would have allegedly

20  testified Cornejo later acknowledged petitioner was not his attacker.  Petitioner claims Jennings

21  would have testified Victor Solano, the lead prosecution witness, once fought with petitioner and

22  expressed hatred and animosity toward petitioner.  Jesse Provencio would have allegedly testified

23  Bradburn told petitioner he would "get him" after the incident between Bradburn and petitioner.

24  Petitioner states Gonzalez would have testified Bradburn stated he would "set you [Gonzalez] up

25  just like I did [petitioner]."

26  //

27  //

28  ────────────────────

[1]Petitioner does not provide a first name.

1       State Court Proceedings

2            The California Court of Appeal found Ulovec was not ineffective in failing to call Berger,

3   Bratton, Jennings, Jesse Provencio, and Gonzalez.  As to Berger, the court found the proffered

4   testimony was not very helpful and petitioner had not established Ulovec's decision was not a

5   rational tactical decision.  (Lodgment 3 at 22.)  The court also found no evidence counsel knew

6   about Bratton and his proposed testimony and no showing the testimony would not have been

7   excluded as hearsay.  (Id. at 22-23.)  The court denied the claim as to Jennings because petitioner

8   did not show he had informed counsel about the witness.  (Id. at 23.)  The court also found rational

9   counsel's tactical decision not to attack Solano's credibility, through Jennings' statements or

10  otherwise.  As to Jesse Provencio, the court found counsel had made an informed tactical decision

11  not to call him.  Provencio's lawyer told Ulovec that Provencio was not credible and would make a

12  bad witness.  (Id. at 24.)  As to Gonzalez, the Court found petitioner had not shown Ulovec knew

13  about Gonzalez, that Gonzalez would have made a good witness, or that the testimony would have

14  supported the defense.  (Id. at 24-25.)

15           Petitioner did not mention Viezaga in his appeal, but raised the claim in his petition filed

16  with the California Supreme Court, which was silently denied.  Petitioner claims Viezaga would

17  have testified Bergman, not petitioner, entered Cornejo's cell before Cornejo emerged, bleeding.

18           Petitioner made a claim concerning Linda Provencio and Leslie Bowers in his motion for

19  new trial, but did not mention these witnesses in his appeal or his petition for writ of habeas corpus

20  to the California Supreme Court.

21       Magistrate Judge's Report

22           The magistrate judge correctly identified the clearly-established federal law regarding

23  ineffective assistance of counsel claims.  In Strickland v. Washington, 466 U.S. 668 (1984), the

24  Court explained "counsel has a duty to make reasonable investigations or to make a reasonable

25  decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular

26  decision not to investigate must be directly assessed for reasonableness in all the circumstances,

27  applying a heavy measure of deference to counsel's judgments."  Id. at 690-91.  The magistrate

28  judge concluded the state court's findings were supported by the record.  Accordingly, the Report

1    found the testimony petitioner argues should have been offered had little probative value, could

2    potentially derail the defense case, would subject the witnesses to cross-examination and

3    impeachment which would hurt petitioner's case, or was unknown to trial counsel prior to trial.

4    The magistrate judge also found that because the petition did not identify the substance of the

5    testimony of Linda Provencio and Leslie Bowers, petitioner had not established ineffective

6    assistance of counsel or any resulting prejudice and thus this unexhausted claim should be denied

7    as clearly non-meritorious.

8            Petitioner's Objections

9            Petitioner objects that Berger's testimony would have helped petitioner.  (Objections Pt. 1

10   at 25.)  Petitioner claims if Berger did not see petitioner enter the cell, that proves petitioner did

11   not enter the cell.  The Court disagrees, as the proferred testimony ("I did not see him enter") was

12   far more equivocal than petitioner contends ("He did not enter").  Petitioner objects Ulovec should

13   have spoken with Provencio rather than his attorney to make an independent determination

14   whether Provencio would make a good witness.  Under Strickland, counsel must make a

15   "reasonable investigation" and "a heavy measure of deference" is given to counsel's judgments.

16   466 U.S. at 690-91.  In this case, counsel was required to evaluate the credibility and effectiveness

17   on the stand of multiple prison inmates.  Thus the Court finds rational Ulovec's decision to rely on

18   the judgment of Provencio's attorney that Provencio would make a bad witness.  Cf. Dows v.

19   Wood, 211 F.3d 480, 486 (9th Cir. 2000) (finding counsel was not ineffective in relying on

20   interviews taken by petitioner's previous attorney rather than repeating those interviews himself).

21   Moreover, no prejudice can be shown because Provencio's proferred testimony was not helpful.

22           As to Gonzalez, Bratton, and Jennings, petitioner objects counsel should have presented

23   their testimony because it was "extremely probative."  (Objections Pt. 1 at 29-31.)  Without a

24   showing Ulovec knew or reasonably could have known of these witnesses and their proferred

25   testimony, petitioner's claim nonetheless fails.  Petitioner also concedes the witnesses would have

26   been impeached.  He nevertheless objects the witnesses could then have been rehabilitated, and

27   without placing them on the stand, reasonable counsel cannot conclude the witnesses would not

28   have been helpful.  (Id.)  The Court disagrees.  Counsel can rationally decide not to offer the

testimony of prison inmates who would likely do more harm than good to petitioner's defense.

Petitioner objects Ulovec did know about Viezaga because Viezaga's statement was included in the files which were returned to petitioner at the close of his case.  (Objections Pt. 1 at 24.)  Petitioner attaches the document reflecting Viezaga's statement as Exhibit A to his objections.  The Court finds that even if counsel knew about Viezaga, he could have rationally decided not to offer another inmate's testimony and rely instead on that of petitioner's other defense witnesses, due to the impeachment and credibility problems which would have been presented by Viezaga's testimony.

Petitioner's objections identify the testimony that he claims could have been elicited from Linda Provencio and Leslie Bowers.  (Objections Pt. 1 at 34.)  Petitioner claims they would have stated petitioner knew threatening Bradburn was a felony, thus rebutting testimony petitioner later said threatening a guard is only a misdemeanor.  This testimony is not exculpatory and reasonable counsel could have concluded this would have done petitioner's defense more harm than good.  Moreover, the testimony goes to a collateral issue and does not raise questions which could have undermined the outcome.  Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995) ("The type of corroborating evidence [petitioner] claims an investigation would have unearthed is so tenuously related to the defense that it belongs in the latter category of evidence in which the decision to search for it or neglect it is left to the discretion of the attorney.").

Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the petition as to this claim.

8.     Ineffective Assistance of Counsel:  Failure to Impeach Victor Solano

Petitioner argues Ulovec should have impeached Victor Solano and his tactical decision to try to use Solano's testimony to petitioner's advantage was irrational.  Petitioner characterizes Solano as the star witness of the prosecution and a jailhouse informant for hire.  During the Marsden hearing, counsel explained he attempted to use Solano's testimony to bolster the defense that another inmate was responsible for the attack on Cornejo.

//

//

1    State Court Proceedings

2    The California Court of Appeal found the decision rational because Solano's testimony

3    suggested someone else, inmate Espinoza, had the opportunity to attack Cornejo.  (Lodgment 3 at

4    26-27.)

5    Magistrate Judge's Report

6    The magistrate judge agreed the decision was rational.  As described by Ulovec during

7    Marsden hearing, he was attempting to "go through the back door through the prosecution's own

8    witness" to establish petitioner's innocence.  (Lodgment 13 at 16.)  Accordingly, the magistrate

9    judge recommended this claim be denied.

10   Petitioner's Objections

11   Petitioner argues the totality of Solano's testimony was incriminatory, counsel should have

12   performed further investigation into petitioner's other proposed witnesses, and it is never

13   acceptable for counsel to choose not to impeach a jail house informant.  (Objections Pt. 1 at 36-

14   38.)  The Court nonetheless agrees with the magistrate judge that the decision was rational and a

15   sound trial tactic.  Petitioner's arguments support the view another rational decision could have

16   been made, but not that impeachment of Solano was the only or best means of representing

17   petitioner.  See Turk v. White, 116 F.3d 1264, 1267 (9th Cir. 1997) (concluding attorney had no

18   duty to investigate an alternative defense directly contradicting the reasonably selected primary

19   defense). Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

20   petition on this claim.

21   9.   Ineffective Assistance of Counsel:  Failure to Cross-Examine the Document Examiners

22   Petitioner claims counsel was ineffective in failing to object to the method by which expert

23   witness Marjorie Ann Fair obtained a handwriting exemplar from petitioner and by failing to

24   cross-examine Fair.  Petitioner argues Fair's method of comparing a photocopy of the

25   incriminatory jailhouse letter, or "kite," with an unphotocopied sample of petitioner's handwriting,

26   was defective.  Petitioner also claims counsel should have cross-examined expert witness William

27   Leaver, the document examiner who established the legal pad containing the razor blade contained

28   petitioner's writing.

1      State Court Proceedings

2          Petitioner did not raise this claim on appeal but did present it in his petition to the

3  California Supreme Court, which the court silently denied.

4      Magistrate Judge's Report

5          The magistrate judge correctly identified the clearly-established Supreme Court law

6  regarding ineffective assistance of counsel found in <u>Strickland</u>.  The magistrate judge concluded

7  petitioner had not shown any support for his theory photocopied handwriting cannot be analyzed.

8  The Report also found counsel could have reasonably declined to cross examine credible experts

9  when nothing out of the ordinary had occurred.

10     Petitioner's Objections

11         Petitioner's objections state that photocopied handwriting obviously cannot be used for

12  comparison with un-photocopied writing. (Objections Pt. 1 at 39, 42.)  While he claims an expert

13  witness would have shown this, he continues to provide no support for this assertion.  Petitioner

14  also objects that Ulovec should have cross-examined Fair.  Fair testified petitioner wrote out the

15  contents of the kite while giving his handwriting sample before she finished reading the contents to

16  him.  (Lodgment No. 12 at 230.)  Petitioner claims counsel should have, during cross-examination,

17  established petitioner knew the contents because Fair had him write the sample twice.  Petitioner

18  does not establish counsel knew or had any reason to know petitioner wrote the sample twice, or

19  that it was an irrational decision not to continue to cross-examine Fair.  Moreover, in light of

20  Leaver's testimony it was petitioner's handwriting on the letter, petitioner has not shown any error

21  could have prejudiced him.  Petitioner further asserts counsel was ineffective by failing to cross-

22  examine Fair regarding the absence of counsel while Fair took the sample from petitioner.

23  (Objections Pt. 1 at 39.)  Petitioner does not explain how this would have assisted his defense.

24  Petitioner also objects Ulovec should have attacked Leaver's qualifications.  (<u>Id.</u> at 41.)   Without

25  showing these qualifications were deficient, petitioner cannot show prejudice.  <u>Hendricks</u>, 70 F.3d

26  at 1042 ("Absent an account of what beneficial evidence investigation into any of these issues

27  would have turned up, [petitioner] cannot meet the prejudice prong of the <u>Strickland</u> test.").

28  Petitioner also objects counsel should have cross-examined Leaver about the chain of custody of

1  the razor blade.  (Objections Pt. 1 at 44-45.)  Petitioner makes no showing Leaver had anything to

2  do with the loss of the razor blade or that cross-examining Garcia about the loss instead was not

3  the rational tactical decision. See Hendricks, 70 F.3d at 1042.

4     Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

5  petition as to this claim.

6  10.     Denial of Right to Impartial Jury Trial

7     Petitioner claims his convictions should be reversed because they are tainted by juror

8  misconduct.  Petitioner contends juror Gary Darr recognized petitioner from an alleged incident

9  years before in which Darr shot at petitioner, believing he had stolen $20,000 of marijuana plants

10  from him.  Petitioner also argues Darr failed to disclose a prior conviction during voir dire when

11  the court inquired whether any of the potential jurors had criminal convictions.

12     State Court Proceedings

13     Petitioner, not realizing he knew Darr until after trial, raised juror misconduct as a ground

14  in his new trial motion.  The trial court held an evidentiary hearing, at which Darr testified he had

15  not recognized petitioner, did not remember being asked about prior convictions during voir dire,

16  and believed he did not need to disclose an expunged conviction.  Petitioner presented two

17  affidavits from petitioner's former acquaintances stating Darr recognized petitioner at the

18  commencement of the trial.  At the hearing, defense counsel requested a continuance because a

19  witness, Robert Scott Crowley, was travelling to the hearing and had not yet arrived.  The trial

20  court denied the motion and found even if Darr had committed misconduct, petitioner could not

21  show prejudice.

22     Petitioner appealed, and the California Court of Appeal reversed.  The appellate court

23  remanded for another evidentiary hearing in which petitioner would be able to present Crowley's

24  testimony.  Despite numerous attempts by both prosecution and defense, Crowley could not be

25  located.  Accordingly, the trial court made detailed findings of fact regarding Darr's credibility and

26  denied the motion for new trial. (Lodgment 4.)  Petitioner again appealed, and the appellate court

27  affirmed. (Lodgment 5.)

28  //

1         Magistrate Judge's Report

2         The magistrate judge correctly identified the clearly-established federal law.  "[T]he

3    remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to

4    prove actual bias."  Smith v. Phillips, 455 U.S. 209, 215 (1982).  Findings of fact are presumed

5    correct in habeas proceedings under 28 U.S.C. § 2254.  Credibility determinations are entitled to

6    special deference.  Patton v. Yount, 467 U.S. 1025, 1028 (1984).  Applying this standard, the

7    magistrate judge found the trial court's finding Darr is credible was well-supported.  Accordingly,

8    the Report recommended the Court deny the petition on this claim.

9         Petitioner's Objections

10        Petitioner objects that state action prevented him from proving Darr was biased.

11   (Objections Pt. 1 at 49.)  Petitioner argues that since the state court denied his requested

12   continuance at the first evidentiary hearing, and then Crowley was unavailable for the second

13   evidentiary hearing, the state court was responsible for Crowley's failure to testify.  But this

14   contention conflicts with the record.  As the state court found, Crowley failed to appear because he

15   could not be located or chose not to be located.  Moreover, petitioner's suggestion Crowley failed

16   to appear due to threats made by Darr further undermines his contention that state action made

17   Crowley unavailable.  (Id. at 49-50 & 53.)

18        Petitioner also argues the trial court's finding Darr is credible was clearly erroneous

19   because of inconsistencies between his declaration and his testimony.  (Id. at 50-51.)  Darr initially

20   stated he had not been asked about his prior convictions, and later stated the question had been

21   posed to the entire group.  This minor contradiction does not undermine the trial court's finding of

22   credibility.

23        Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

24   petition as to this claim.

25   //

26   //

27   //

28   //

1  11.    *Massiah* Violation

2         Petitioner claims his Fifth Amendment right against self-incrimination and Sixth

3  Amendment right to counsel were violated when Solano, another inmate, initiated discussions with

4  him regarding the Cornejo assault.

5         State Court Proceedings

6         This claim was not presented in petitioner's direct appeal, but was presented in his petition

7  for writ of habeas corpus to the California Supreme Court.

8         Magistrate Judge's Report

9         The Report correctly identified the clearly-established federal law and correctly

10  characterized petitioner's claim as arising under Massiah v. United States, 377 U.S. 201 (1964).

11  Under Massiah and its progeny, the government may not take action designed deliberately to elicit

12  incriminating remarks without a waiver of the right to counsel, after the right to counsel has

13  attached.  377 U.S. at 72-73; see also McCleskey v. Zant, 499 U.S. 467, 474 (1991); United States

14  v. Henry, 447 U.S. 264, 273 (1980).  The magistrate judge concluded there was no evidence

15  Solano did anything more than report the voluntary statements made by petitioner, and thus

16  petitioner's claim should be denied.

17         Petitioner's Objections

18         In petitioner's objections, he denies any such conversations with Solano took place.

19  (Objections Pt. 1 at 56.)  Petitioner continues to fail to meet his burden to demonstrate the

20  government used Solano to elicit the incriminating statements.  Petitioner also points out the

21  inconsistencies he sees in the different statements made by Solano on various occasions.  (Id. at

22  57-59.)  These alleged inconsistencies go to Solano's truthfulness, but not to whether the

23  government initiated Solano's conversations with petitioner.

24         Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

25  petition as to this claim.

26  //

27  //

28  //

12.     _Miranda_ Violation

Petitioner claims his Fifth Amendment right against self-incrimination was violated when Deputies Burke and Reynolds discussed the threat against Bradburn with petitioner without reading him Miranda warnings.

State Court Proceedings

This claim was not presented in petitioner's direct appeal, but was included in his petition for writ of habeas corpus to the California Supreme Court.

Magistrate Judge's Report

The magistrate judge correctly identified the clearly-established Supreme Court law regarding custodial interrogation.  Under Miranda v. Arizona, 384 U.S. 436 (1966), a suspect subject to custodial interrogation must be advised of his federal constitutional right to remain silent and his right to have an attorney present during questioning.  A prisoner is in "custody" if there is an additional restriction on his freedom beyond what is normally experienced.  United States v. Turner, 28 F.3d 981, 983 (9th Cir. 1994); Cervantes v. Walker, 589 F.2d 424, 428-29 (9th Cir. 1978).  To determine whether a prison interrogation is custodial, the Court must consider four factors focusing on additional restrictions on the prisoner: "the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him."  Turner, 28 F.3d at 983 (quoting Cervantes v. Walker, 589 F.2d 424, 427 (9th Cir. 1978)).  Because none of these factors were present, the Report concluded petitioner's conversations with the deputies were not "custodial."

Petitioner's Objections

Petitioner denies in his objections that these conversations took place.  (Objections Pt. 1 at 60.)  Thus petitioner contradicts his argument he was "in custody" when he made the statements.  Petitioner further argues the testimony by the deputies is not logical, the conversations could not have happened, and the deputies' testimony contained inconsistencies.  (Id.)  None of these facts indicate a Miranda violation.  Petitioner further objects Miranda warnings were required once the deputies mentioned "misdemeanor" or "felony" with respect to the threat against Bradburn.

1   (Objections Pt. 2 at 1.)  This position is inconsistent with the Ninth Circuit's test, articulated in

2   Turner, for custodial interrogation of a prisoner.  The Court finds no evidence any of the

3   conditions of custodial interrogation were present when the deputies discussed petitioner's threat

4   to Bradburn.

5        Accordingly, the Court rejects petitioner's objections, adopts the magistrate judge's

6   Report, and denies the petition as to this claim.

7   13.    Ineffective Assistance of Counsel: Failure to Raise *Miranda* and *Massiah* Violations

8        Petitioner claims Ulovec's failure to advance his Miranda and Massiah claims, as set out

9   above, constituted ineffective assistance of counsel.

10       State Court Proceedings

11       While petitioner did not appeal on this ground, he presented this claim in his petition for

12   writ of habeas corpus to the California Supreme Court, which was silently denied.

13       Magistrate Judge's Report

14       The magistrate judge correctly set out the clearly-established law regarding ineffective

15   assistance of counsel as stated in Strickland.  The magistrate judge found that because petitioner

16   had not established Miranda or Massiah violations, petitioner had also failed to establish Ulovec's

17   performance was deficient in failing to raise those claims or caused petitioner prejudice.

18       Petitioner's Objections

19       Petitioner objects Ulovec should have pursued these issues on cross-examination of Solano

20   and the deputies, and should have investigated the prison's policies and procedures regarding

21   questioning inmates and advising inmates of their constitutional rights  (Objections Pt. 2 at 3-5.)

22   Because the Court finds petitioner's Miranda and Massiah rights were not violated, the Court also

23   finds counsel's failure to raise these issues at trial was not deficient and did not cause petitioner

24   prejudice.  Accordingly, the Court rejects petitioner's objections, adopts the magistrate judge's

25   Report, and denies the petition as to this claim.

26   //

27   //

28   //

04cv1726

14.    Prosecutorial Misconduct:  *Brady* violation

Petitioner claims the prosecutor committed misconduct in failing to disclose information about Solano's testimony and in failing to disclose that the razor blade extracted from the legal pad in petitioner's cell had been lost.

State Court Proceedings

The prosecution made a motion *in limine* that Solano be permitted to testify about a threat petitioner made to Solano.  This testimony was intended to show petitioner attempted to fabricate and suppress evidence, suggesting consciousness of guilt.  (Lodgment 12 at 126.)  While the prosecution, defense counsel, and the court consistently referred to the threat as being made in August of 1997, this was inaccurate.  Solano testified the threat was made in October of 1997.  Also at trial, Deputy Garcia testified the original razor blade found in the spine of the notebook had been lost, but that the razor blade resembled the razor blade provided by the prosecution.  Petitioner did not raise this claim on direct appeal, but did raise it in his habeas petition to the California Supreme Court.

Magistrate Judge's Report

The Report accurately identifies the clearly-established federal law.  "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985).

The magistrate judge concluded petitioner had not shown the date of the threat to Solano was relevant, and thus failed to show how an inadvertent failure to disclose the correct date could have impacted the result of petitioner's trial.  The magistrate judge also found petitioner's mere speculation the razor blade might have contained fingerprints which might have been exculpatory was insufficient to show a reasonable probability the defense could have capitalized on the loss of the razor blade had the defense been notified sooner.

//

1       Petitioner's Objections

2       Petitioner contends that if he had known Solano claimed the statement was made in

3   October, 1997, he could have proven the statement never occurred because he and Solano did not

4   have contact in October.  (Objections Pt. 2 at 6.)  The evidence petitioner presents, however,

5   indicates Solano and petitioner could have had contact in October.  (Garcia Declaration, Doc. No.

6   114-2, at 58-60.)

7       Petitioner also objects if he had known the razor blade had been lost, he would have moved

8   for sanctions and to dismiss the indictment based on the failure to present any evidence as to a

9   crucial element of the crime.  (Objections Pt. 2 at 8.)  As will be discussed later, because there was

10  no evidence the loss of the razor blade was intentional, the court would not have sanctioned the

11  prosecution for its loss.  Furthermore, it is not necessary to present the actual contraband item in

12  order to prove a possessory offense.  Thus, the court would have denied petitioner's motion to

13  dismiss the indictment.  Accordingly, petitioner has not met his burden to show a reasonable

14  probability the result of his trial would have been different if he had learned of the loss of the razor

15  blade prior to trial.  Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001) (denying claim of bad

16  faith destruction of evidence without a "colorable showing, or indeed any showing at all, that the

17  State destroyed [the evidence] to prevent disclosure of evidence favorable to the defense, nor is

18  there any reason to believe that the exculpatory value of the [evidence] was apparent prior to its

19  destruction.").

20      For the foregoing reasons, the Court rejects petitioner's objections, adopts the Report, and

21  denies the petition as to this claim.

22  15.     Due Process of Law: Trial Court Error in Permitting Solano to Testify

23      Petitioner claims the trial court's ruling Solano could testify as to a threat made by

24  petitioner violated his due process rights.  Because, as discussed above, the date of the threat was

25  mistakenly believed to be August 1997, but was actually October 1997, and the date had no impact

26  on the substance of Solano's testimony or the fairness of trial, this claim is also without merit.  The

27  Court thus rejects petitioner's objections, adopts the Report, and denies the petition as to this

28  claim.

1    16.    Due Process of Law: Insufficient Evidence

2          Petitioner claims his due process rights were violated by his conviction without sufficient

3    evidence on count three, the possession of the razor blade.  He argues the government did not

4    prove he knowingly possessed a sharp instrument because the razor blade was lost before trial.

5          State Court Proceedings

6          Petitioner did not raise this claim in his direct appeal, but did raise it before the California

7    Supreme Court, which silently denied his petition for writ of habeas corpus.

8          Magistrate Judge's Report

9          The magistrate judge correctly identified the clearly-established federal law.  The Court

10   must determine whether "any rational trier of fact could have found the essential elements of the

11   crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 324 (1979).  The Court

12   must view the evidence in the light most favorable to the prosecution and must presume the trier of

13   fact resolved conflicting evidence in favor of the prosecution.  Id. at 326.  The magistrate judge

14   concluded production of the razor blade was not an element of the offense, and sharpness was

15   adequately established by the witnesses testifying the found item was a razor blade.  There was

16   also testimony the blade looked exactly like the example blade presented at trial.

17         Petitioner's Objections

18         Petitioner objects there were inconsistencies in the testimony of the witnesses regarding

19   how the razor blade was lost.  (Objections Pt. 2 at 9-11, 17-19.)  These alleged inconsistencies do

20   not affect whether or not a reasonable jury could have found the object possessed by petitioner was

21   sharp.  Petitioner also objects the instructions given to the jury explaining petitioner must have

22   knowingly possessed the razor blade were defective.  (Id. at 11-13, 20.)  This claim is addressed

23   separately infra.  Petitioner also claims the razor blade never existed.  (Id. at 14.)  The jury was

24   presented with sufficient evidence to find the razor blade did exist, was in the stem of petitioner's

25   notebook, and that petitioner was aware it was there.  While petitioner presented testimony of

26   another inmate that he had placed the razor blade in the notebook and then loaned it to petitioner

27   (id.), the jury apparently rejected that testimony, and the Court must view the evidence in the light

28   most favorable to the prosecution.  Finally, petitioner claims there was no evidence presented that

1  the razor blade was sharp.  (Id. at 21-23.)  Razor blades are sharp objects by definition, and the

2  deputies testified the blade was the same as the blade shown to the jury in the courtroom.

3      Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

4  petition as to this claim.

5  17.    Ineffective Assistance of Counsel:  Failure to Challenge Sharpness

6      Petitioner claims Ulovec was ineffective in failing to challenge the sharpness of the razor,

7  to object to the lack of evidence in the record as to sharpness, and to move for sanctions against

8  the prosecution for the loss of the razor.

9          State Court Proceedings

10     Petitioner raised this claim on appeal.  The California Court of Appeal found Ulovec made

11  a reasonable tactical decision.  Ulovec concluded sanctions would not be granted where there was

12  no evidence law enforcement acted in bad faith and no reasonable probability the razor blade

13  constituted exculpatory evidence.

14         Magistrate Judge's Report

15     After noting again the standard for establishing ineffective assistance of counsel set forth in

16  Strickland, the magistrate judge recommended the petition be denied on this ground because the

17  evidence as to count three was adequate and there was no evidence the razor blade was

18  intentionally lost.

19         Petitioner's Objections

20     Petitioner objects Ulovec's decision was not rational because he did not conduct an

21  investigation into whether the razor blade had been lost in bad faith.  (Objections Pt. 2 at 24.)

22  Without showing reasonable counsel would have investigated, or that an investigation could have

23  discovered anything, petitioner's claim fails.  Hendricks, 70 F.3d at 1042 ("Absent an account of

24  what beneficial evidence investigation into any of these issues would have turned up, [petitioner]

25  cannot meet the prejudice prong of the Strickland test.").  Petitioner also states he has established

26  prejudice by his conviction based on insufficient evidence.  (Id. at 25.)  Because the Court rejects

27  the claim that insufficient evidence existed to convict petitioner, the Court also concludes

28  petitioner has not established prejudice caused by Ulovec's actions.

1    Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

2    petition as to this claim.

3    18.    Due Process of Law:  *In Limine* Ruling on Bradburn's "Sustained Fear" Testimony

4        Petitioner claims the state court violated his due process rights when it allowed Bradburn to

5    testify he knew petitioner was associated with a gang, he had previously assaulted staff, and he

6    was a dangerous prisoner because of where he had been housed in prison.  The court admitted this

7    testimony in order to demonstrate Bradburn reasonably felt "sustained fear" after being threatened

8    by petitioner.  "Sustained fear" is an element of the charged crime of making a terrorist threat.

9    Calif. Penal Code § 422 (requiring threat to cause recipient "reasonably to be in sustained fear for

10   his or her own safety").

11       State Court Proceedings

12       The defense made a motion *in limine* to exclude all of Bradburn's proposed testimony

13   regarding petitioner's violent tendencies.  At a hearing on the motion, the court excluded parts of

14   the proposed testimony which were inflammatory or unsupported by evidence.  (Lodgment 12 at

15   59 & 61.)  Petitioner would not agree to a stipulation on the sustained fear element, and so the

16   court allowed Bradburn to testify as to most of what he knew about petitioner.  (Id. at 59.)  At trial,

17   Bradburn was permitted to testify he knew petitioner was associated with a gang, that petitioner

18   had previously been assaultative to staff, and that Bradburn inferred petitioner was violent because

19   of the prisons and dangerous offender units to which he had been confined.  The court gave the

20   jury a limiting instruction explaining that this evidence could only be considered by them for the

21   purpose of evaluating whether Bradburn had a sustained fear.  Petitioner raised this claim in his

22   petition for writ of habeas corpus to the California Supreme Court.

23       Magistrate Judge's Report

24       The magistrate judge correctly identified the clearly-established Supreme Court law

25   regarding improper admission of evidence.  Under Estelle v. McGuire, 502 U.S. 62, 67-68 (1991),

26   the admission of evidence violates due process if it renders the trial fundamentally unfair.  Because

27   the trial court carefully tailored the admission of Bradburn's testimony to the prosecution's need to

28   prove "sustained fear" and excluded the unduly prejudicial or unsupported evidence, the

1   magistrate judge found petitioner's trial was not fundamentally unfair.

2       Petitioner's Objections

3       Petitioner objects the trial court never ruled Bradburn could testify as to the staff assault

4   evidence.  (Objections Pt. 2 at 27.)  At the motions *in limine* hearing, the court did request more

5   information before making a final ruling.  (Lodgment 12 at 51-52.)  The court later stated it had

6   admitted the evidence.  The court then continued to discuss the limited purpose of the evidence.

7   (Id. at 56.)  The admission of the evidence did not render the trial fundamentally unfair.

8       Petitioner objects that he is not associated with a gang and he has not been assaultative to

9   staff.  (Objections Pt. 2 at 27.)  Bradburn believed petitioner to be associated with a gang based on

10  a prison report to that effect.  Based upon this information, Bradburn believed petitioner could

11  carry out his threat through other inmates.  He also read in petitioner's file that petitioner had

12  assaulted staff.  Thus the evidence was properly admitted on the element of "sustained fear."

13  Petitioner objects the admission of the evidence violated the California Evidence Code (id. at 29),

14  but federal habeas relief is not available for claimed violations of state law.  Petitioner also objects

15  the evidence violated his rights under the Confrontation Clause.  (Id. at 30.)  Because the evidence

16  was not offered for truth, but to show state of mind, it is not testimonial hearsay within the

17  meaning of Crawford v. Washington, 541 U.S. 36, 53 (2004).  Petitioner also objects the limiting

18  instruction given to the jury to only consider the evidence to establish Bradburn's state of mind

19  was improper.  (Objections Pt. 2 at 33.)  This claim is raised separately denied, infra.

20      Petitioner also objects Bradburn should not have been permitted to testify he believed

21  petitioner was a violent prisoner based on where he had been housed.  Petitioner argues he was not

22  housed in those prisons because of his violence.  Again, the evidence was only offered to show

23  Bradburn's sustained fear, and the jury was given a limiting instruction to that effect.  The Court

24  rejects petitioner's arguments the jury improperly focused on this evidence, that this evidence was

25  unduly prejudicial, or that the jury instruction improperly focused the jury's attention on this

26  evidence.  See Karis v. Calderon, 283 F.3d 1117, 1132 (9th Cir. 2002) ("The instructions that

27  [petitioner] challenges could also have worked to his benefit to alleviate potential prejudice from

28  consideration of [prejudicial evidence].").

1    Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

2 petition as to this claim.

3    19.    Prosecutorial Misconduct: Exceeding the Scope of the *In Limine* Rulings

4    Petitioner claims the prosecution solicited testimony which had been excluded *in limine*

5 and then improperly referenced the testimony during closing argument.  At a pre-trial hearing, the

6 court ruled Bradburn could testify he believed petitioner to be "associated with" a prison gang.   At

7 trial, the prosecutor asked Bradburn why he feared petitioner:

8         Q:    And were you aware or did you believe in reference to your state of mind in
               perceiving the threat, that Mr. Madsen had been assaultative toward staff?
9
10        A:    Yes, or we wouldn't have him in the green clothing.  I knew that he was in a
               prison gang which is a violent gang, and the way we had him housed and
               moving him with chains, to keep them all separate and protect us.
11
12        Q:    You knew or believed that the defendant was associated with a particular
               prison gang; is that right?

13        A:     Yes, sir.

14  (Lodgment 12 at 245-47.)

15    State Court Proceedings

16    Petitioner did not present this claim in his state court appeal, but did include it in his

17 petition for writ of habeas corpus to the California Supreme Court.

18    Magistrate Judge's Report

19    The Report correctly identified the clearly-established federal law regarding prosecutorial

20 misconduct.  Petitioner must show the prosecutor committed misconduct which "so infected the

21 trial with unfairness as to make the resulting conviction a denial of due process."  Darden v.

22 Wainwright, 477 U.S. 168, 181 (1986).  The "touchstone" of the Court's inquiry is the "fairness of

23 the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).  The

24 Court must look at the trial as a whole and place the prosecutor's remarks in context.  Greer v.

25 Miller, 483 U.S. 756, 765-66 (1987).  Petitioner must also show the error was not harmless.  Id.

26 //

27 //

28 //

1    The magistrate judge recommends the petition be denied as to this claim because the minor

2    differences between the testimony given and the permitted scope of the testimony did not render

3    the trial fundamentally unfair and the prosecutor quickly brought the witness back within the scope

4    of the *in limine* ruling.

5    Petitioner's Objections

6    Petitioner objects that other departures were made from the scope of the *in limine* rulings.

7    (Objections Pt. 2 at 39.)  Petitioner's characterization of the *in limine* rulings is contradicted by the

8    record.  Specifically, the court ruled Bradburn could not testify he believed petitioner had "pull"

9    within the jail because that statement was too vague and unsupported by specific evidence.

10   Petitioner argues the gang evidence, which was ruled admissible, in conjunction with the other

11   permitted evidence, gave the jury "the inference" petitioner had pull within the jail.  (Id. at 40.)  As

12   the proffered evidence was within the scope of the court's *in limine* ruling, the Court rejects this

13   frivolous argument.

14   Petitioner also argues the prosecutor violated the scope of the court's *in limine* ruling

15   permitting Bradburn to testify petitioner was housed in 4-B by having Bradburn testify what

16   housing in 4-B meant to him.  This was indisputably within the scope of the court's ruling, as all of

17   the permitted evidence was intended to demonstrate the effect on Bradburn's "sustained fear."

18   The court specifically ruled: "[t]he deputy will be allowed to testify as to what it meant to him, that

19   [petitioner] was in a special housing unit."  (Lodgment 12 at 49, emphasis added.)

20   Petitioner further argues the prosecutor should not have been able to elicit testimony

21   regarding petitioner's gang affiliation because the trial court had excluded the specific identity of

22   the gang (the Aryan Brotherhood) in order to avoid making the issue racially charged.  Petitioner

23   argues because he is white, Bradburn's testimony petitioner was in a gang was the practical

24   equivalent of identifying the gang as the Aryan Brotherhood.   (Id. at 43.)  Because the court

25   specifically allowed Bradburn to testify as to gang affiliation, for the limited purpose of

26   establishing Bradburn's sustained fear, the argument the prosecutor exceeded the scope of that

27   ruling is frivolous.

28   //

1    Petitioner objects the prosecutor committed misconduct during closing argument when he

2    referenced Bradburn's testimony he knew petitioner was a prison gang member.  (Objections Pt. 2

3    at 44.)  The California Court of Appeal rejected this argument because petitioner had not

4    established how gang membership is substantially more inflammatory to a juror than "association"

5    with a gang.  (Lodgment 3 at 48.)  Petitioner has continued to fail to meet this burden, and the

6    Court thus finds any misconduct by the prosecutor was harmless.  Accordingly, the Court rejects

7    petitioner's objections, adopts the Report, and denies the petition as to this claim.

8    20.    Ineffective Assistance of Counsel:  Bradburn's testimony

9    Petitioner claims his attorney's failure to object to Bradburn's testimony petitioner was

10   "in" rather than "associated with" a gang constituted ineffective assistance of counsel.  Petitioner

11   also argues Ulovec should have researched Bradburn's background in order to effectively cross-

12   examine him and discredit him as a witness.  Petitioner further argues Ulovec should have

13   objected to Bradburn's testimony on the ground that Bradburn is not a gang expert.

14   State Court Proceedings

15   Petitioner did not raise this claim in his appeal or in his petition to the California Supreme

16   Court.

17   Magistrate Judge's Report

18   The magistrate judge, again noting the appropriate standard of review for ineffective

19   assistance of counsel claims found in Strickland, concluded Ulovec's failure to object did not

20   render him ineffective.  Because the prosecutor quickly remedied the error and because any

21   objection might have highlighted the testimony for the jury, the decision not to object was rational.

22   The Report also concluded expertise in gangs was not relevant to Bradburn's belief regarding

23   petitioner's gang affiliation, and research into whether Bradburn had been violent toward inmates

24   was not relevant because petitioner was not claiming self-defense.  The magistrate judge also

25   found petitioner had not established prejudice.

26   //

27   //

28   //

1      Petitioner's Objections

2          Petitioner objects Bradburn's testimony exceeded the scope of the *in limine* rulings.

3   (Objections Pt. 2 at 48.)  As the Court has already held, Bradburn's testimony only exceeded the

4   court's ruling as to whether petitioner was "in" or "associated with" a gang.  The Court agrees that

5   because the prosecutor immediately narrowed the statement and any objection would have

6   highlighted the testimony for the jury, Ulovec acted rationally in failing to object.[2]  Petitioner also

7   argues Ulovec should have objected to the prosecutor's closing argument in which he summarized

8   Bradburn's testimony.  Petitioner has again failed to meet his burden in establishing this was not a

9   rational tactical decision.

10          Petitioner further objects Ulovec should have demanded disclosure of Bradburn's previous

11  complaints against inmates.  (Objections Pt. 2 at 52.)  As the magistrate judge found, petitioner

12  had no right to obtain these files under California law.  Moreover, petitioner has not established

13  any reasonable probability a review of Bradburn's file would have produced material evidence.

14  See Hendricks, 70 F.3d at 1042 ("Absent an account of what beneficial evidence investigation into

15  any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the

16  Strickland test.").  In fact, a state court judge reviewed the file *in camera* and informed counsel

17  there was nothing useful and thus no disclosure was necessary.  (Lodgment 13 at 8, 338-39.)

18  Ulovec thus acted reasonably by not continuing to research Bradburn's history to develop

19  impeachment evidence.  Accordingly, the Court rejects petitioner's objections, adopts the Report,

20  and denies the petition as to this claim.

21  21.    Prosecutorial Misconduct:  Eliciting Gang Testimony from Solano

22          Petitioner claims the prosecution committed misconduct in eliciting testimony from Solano

23  that petitioner was a member of a gang.  The prosecutor asked Solano what petitioner said when

24  Solano asked him why he had assaulted Cornejo.  (Lodgment 12 at 205.)  Solano responded

25  petitioner said he tried to be peaceful but it didn't work, and that "it's a game in the gang that

26  you've got to follow orders or you're weak."  (Id.)  This testimony was not the subject of an *in*

27  ─────────────

28      [2]As the court noted during the *in limine* hearing, if "on cross-examination Mr. Ulovec tries to limit what 'association' means, he might come across the contrary information that in fact [Bradburn] believes he was fully associated and fully a member."  (Lodgment 12 at 53.)

1    *limine* ruling, and thus petitioner's argument the prosecutor violated the *in limine* ruling regarding

2    Bradburn's testimony about gang membership is meritless.  (Objections Pt. 2 at 56.)  The

3    testimony was relevant to explaining petitioner's motive in attacking Solano, and counsel did not

4    object to the testimony.  As the magistrate judge found, no prosecutorial misconduct occurred and

5    the limited gang reference did not render the trial fundamentally unfair.  Petitioner objects that

6    Solano's testimony was false.  (Id. at 55 & 57.)  There is no evidence to support petitioner's claim

7    and no reason to find the prosecution believed Solano was lying.  Petitioner further objects

8    Ulovec's failure to object to this testimony was ineffective assistance of counsel.  Again, the Court

9    rejects this argument because a reasonable lawyer could tactically choose not to highlight and

10   emphasize evidence of gang membership.  Accordingly, the Court rejects petitioner's objections,

11   adopts the Report, and denies the petition as to this claim.

12   22.    Due Process of Law: Trial Court's Admission of Other Acts Evidence

13          Petitioner claims the trial court should not have admitted evidence petitioner had, on other

14   occasions, illegally possessed razor blades and an L-shaped metal piece.  The evidence was

15   admitted to help prove the "knowledge" element of count three, knowing possession of a razor

16   blade.  The court gave a limiting instruction directing the jury to only consider the evidence in

17   assessing whether petitioner knew he possessed the blade.  (Lodgment 12 at 455.)

18          State Court Proceedings

19          Petitioner raised this claim in his appeal.  The California Court of Appeal held the other

20   acts evidence was relevant to petitioner's knowledge of the blade, was not more prejudicial than

21   probative, and was thus properly admitted.

22          Magistrate Judge's Report

23          The magistrate judge correctly identified the clearly-established federal law regarding

24   improper admission of evidence.  The erroneous admission of evidence at trial denies a defendant

25   the right to due process only if the evidence rendered the trial fundamentally unfair.  Alberni v.

26   McDaniel, 458 F.3d 860, 865 (9th Cir. 2006) (citing Dowling v. United States, 493 U.S. 342, 352

27   (1990)).  Moreover, it is well established that evidence of other crimes is admissible to prove

28   knowledge when the probative value of the evidence outweighs the potential prejudicial effect.

1   Fed. R. Evid. 404(b); United States v. Brown, 880 F.2d 1012, 1014 (9th Cir. 1989).  Applying this

2   clearly-established law, the court concluded petitioner's trial was not rendered unfair by the

3   admission of the evidence of prior possession of contraband objects.

4         Petitioner's Objections

5         Petitioner objects the limiting instruction was unduly prejudicial and had the effect of

6   directing the jury to convict on the basis of propensity evidence.  (Objections Pt. 3 at 1.)  As

7   discussed separately, the Court rejects petitioner's claims that limiting instructions violate due

8   process by actually emphasizing prejudicial evidence.  Petitioner also objects the evidence was

9   extremely prejudicial.  (Id.)  The trial court, however, found the prejudice to be slight and

10  outweighed by the probative value of the evidence.  Moreover, to implicate the Due Process

11  Clause, it is not enough for Petitioner to show the probative value of the contested evidence was

12  outweighed by its prejudicial effect.  Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986).

13  Petitioner is not entitled to relief "unless admission of the [evidence] was arbitrary or

14  fundamentally unfair."  Id.  In this case, the evidence did not render petitioner's trial

15  fundamentally unfair.  It related to the issue of petitioner's knowledge, was limited in scope, and

16  was not inflammatory.  Petitioner further objects the other acts evidence was improper because the

17  L-shaped piece of metal was not a weapon and the other razor blades were unaltered.  (Objections

18  Pt. 3 at 2-3.)  Petitioner argues the evidence thus does not tend to show knowledge.  The Court

19  finds the evidence, however, sufficiently similar to be relevant.  Petitioner objects the evidence

20  was "propensity" evidence.  (Id.)  As the magistrate judge noted, it is well-settled that evidence of

21  other acts may be used to prove knowledge in these circumstances.  Accordingly, the Court rejects

22  petitioner's objections, adopts the Report, and denies the petition as to this claim.

23  23.    Due Process of Law:  Erroneous Jury Instructions Regarding Propensity

24         Petitioner claims the limiting instructions given to the jury made the jury focus on the

25  most inflammatory evidence and thus rendered his trial fundamentally unfair.  The trial court gave

26  Judicial Council of California Criminal Jury Instruction ("CALJIC") 2.50, a limiting instruction

27  regarding the use of evidence of petitioner's prior acts of possession to establish knowledge as to

28

count three.[3]  The court also gave the jury CALJIC 2.09, an instruction limiting the jury's consideration of the statements made by Bradburn about petitioner's dangerousness for the sole purpose of establishing Bradburn's "sustained fear" in count four.[4]

State Court Proceedings

Petitioner did not raise this claim in his appeal or in his petition for writ of habeas corpus to the California Supreme Court.  Therefore, the claim is not exhausted and may only be denied if it is "perfectly clear" it has no merit.

Magistrate Judge's Report

The magistrate judge correctly identified the clearly-established federal law regarding jury instructions.  Federal habeas relief is warranted where a petitioner establishes the ailing instruction by itself "so infected the entire trial that the resulting conviction violates due process."  Estelle, 502 U.S. at 71-72; see also Donnelly v. DeChristophoro, 416 U.S. 637, 643 (1974) (explaining the challenged instruction cannot merely be "undesirable, erroneous, or even 'universally condemned,'" but must violate some constitutional right).  The instruction may not be judged in artificial isolation, rather, it must be considered in the context of both the instructions as a whole and the trial record.  Estelle, 502 U.S. at 72.  Estelle presupposes the jury instruction was somehow faulty under state law.  Id. at 71-72.

---

[3]The court instructed the jury:

> Evidence has been introduced for the purpose of showing that the defendant committed crimes other than that for which he is on trial.  Evidence was received pertaining to possession of certain items by defendant in the Vista Detention Facility.  This evidence, if believed, may not be considered by you to prove the defendant is a person of bad character or that he has a disposition to commit crimes.  It may be considered by you only for the limited purpose of determining if it tends to show: The defendant had knowledge of the nature of things found in his possession as charged in Count 3.  For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as you do all other evidence in the case.  You are not permitted to consider this evidence for any other purpose.

(Lodgment 12 at 455.)

[4]The court stated:

> [C]ertain evidence was admitted for a limited purpose.  Specifically, Deputy Bradburn testified about information he knew or believed about defendant.  Such evidence was offered for the purpose of determining if defendant has the specific intent to make a threat and to determine if Deputy Bradburn was in sustained fear as a result of the information and threat.  At the time this evidence was admitted you were instructed it could not be considered by you for any purpose other than the limited purpose for which it was admitted.  Do not consider this evidence for any purpose except the limited purpose for which it was admitted.

(Lodgment 12 at 452.)

04cv1726

1    Applying these rules, the magistrate judge found these claims relied on conclusory

2   assertions that the jury interpreted the instructions to have a contrary meaning.  Thus, the

3   magistrate judge recommended these unexhausted claims be denied.

4    Petitioner's Objections

5    Petitioner again objects that the instructions direct the jury's attention to evidence which

6   can only support a propensity inference.  (Objections Pt. 3 at 5, 9, 18 & 21.)  The Court agrees

7   with the magistrate judge's conclusion the evidence was properly admitted.  Moreover, the jury is

8   presumed to follow the instructions given, and the Court will not adopt petitioner's presumption

9   the jury did the opposite.  See Karis, 283 F.3d at 1132 ("The instructions that [petitioner]

10   challenges could also have worked to his benefit to alleviate potential prejudice from consideration

11   of [prejudicial evidence].").  Accordingly, the Court rejects petitioner's objections, adopts the

12   Report, and denies the petition as to this claim.

13   24.    Due Process of Law:  Erroneous Jury Instruction as to the Elements of Count Three

14    The trial court instructed the jury on the elements of count three, possession of a sharp

15   instrument by a prisoner, using CALJIC 7.38.[5]  Petitioner claims the instruction was ambiguous and

16   allowed the jury to convict him on that count for the possession of the items found at other times

17   rather than the charged act of possessing the razor blade found in his legal pad.

18    State Court Proceedings

19    Petitioner did not raise this claim in his appeal or in his petition for writ of habeas corpus to

20   the California Supreme Court.  Therefore, the claim is not exhausted and may only be denied if it is

21   "perfectly clear" it has no merit.

22    Magistrate Judge's Report

23    The magistrate judge again correctly identified the clearly-established law that federal

24   habeas relief is only appropriate where the challenged jury instruction "so infected the entire trial

25

26    [5]The court instructed the jury:
        Defendant is accused in Count Three of the Information of having violated section 4502 of the Penal
27      Code.  Every person who, while being confined in, or being conveyed to or from any penal institution,
        or while under the custody of officials, officers or employees of any penal institution, possesses or
28      carries upon his person or has under her custody or control any sharp instrument or weapon, is guilty
        of a violation of Penal Code section 4502(a)(b), a crime.
     (Lodgment 12 at 463.)

1  that the resulting conviction violates due process."  Estelle, 502 U.S. at 71-72.  The magistrate

2  judge concluded that in light of the instruction limiting the use of the evidence of possession of

3  other items (CALJIC 2.50), the jury would not have believed they could convict petitioner without

4  finding he knowingly possessed the razor blade at issue in the charged offense.  The magistrate

5  judge recommended the Court deny this unexhausted claim because it is clearly non-meritorious.

6          Petitioner's Objections

7          Petitioner objects the instruction should contain the language defining knowledge as

8  required by People v. Reynolds, 205 Cal. App. 3d 776 (1988).  (Objections Pt. 3 at 14.)  To the

9  extent petitioner argues the instruction violated state law, habeas relief is not available.  To the

10  extent petitioner argues his conviction violated due process because the court failed to instruct the

11  jury on an essential element of the crime, the Court finds the instructions given did explain the

12  requirement the prosecution prove beyond a reasonable doubt that petitioner possessed the razor

13  blade at issue, not another razor blade at another time.  The limiting instruction given with regard to

14  the use of the "other acts" evidence also negated any likelihood the jury applied the given

15  instructions in a manner that violated the Constitution.

16          Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

17  petition as to this claim.

18  25.    Due Process of Law:  Erroneous Jury Instructions as to Knowledge in Count Three

19          The trial court gave the jury CALJIC instructions 1.24, defining "possession,"[6] and 1.21,

20  defining "knowledge."[7]  Petitioner claims neither of these instructions requires actual knowledge of

21  the razor blade.  Petitioner thus claims the jury could have convicted him based on a finding he

22  knowingly possessed the legal pad containing the razor blade but without knowing the razor blade

---

[6]The court instructed the jury:
    There are two kinds of possession: actual possession and constructive possession.  Actual possession requires that a person knowingly exercise direct physical control over a thing.  Constructive possession does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons.  A person may have possession alone, or two or more persons together may share actual or constructive possession.
(Lodgment 12 at 464.)

[7]The court instructed the jury: "The word 'knowingly' means with knowledge of the existence of the facts in question.  Knowledge of the unlawfulness of any act or omission is not required.  A requirement of knowledge does not mean that the act must be done with any specific intent."  (Lodgment 12 at 464.)

1    was hidden inside.

2          State Court Proceedings

3          Petitioner did not raise this claim in his appeal or in his petition for writ of habeas corpus to

4    the California Supreme Court.  Therefore, the claim is not exhausted and may only be denied if it is

5    "perfectly clear" it has no merit.

6          Magistrate Judge's Report

7          The magistrate judge correctly identified the clearly-established federal law.  Petitioner

8    must demonstrate the challenged jury instruction "infected the entire trial" with such unfairness that

9    "the resulting conviction violates due process."  Estelle, 502 U.S. at 71-72.  The Report

10   recommended the Court reject petitioner's unexhausted claim that the jury was not instructed as to

11   knowledge.  The requisite object at issue was clearly the razor blade, and the instructions were not

12   confusing.          Petitioner's Objections

13         Petitioner again objects the instruction should contain the language defining knowledge

14   required by Reynolds, 205 Cal. App. 3d at 778.  (Objections Pt. 3 at 5, 9-18.)  The Court again

15   notes that to the extent petitioner argues the instruction violated state law, habeas relief is not

16   available.  His conviction did not violate due process because the instructions given did explain the

17   knowledge requirement and did not relieve the prosecution of the burden to prove each element of

18   the offense.  Petitioner's view the jury could have found petitioner knowingly possessed the legal

19   pad and thus convict him of unknowing possession of the razor blade is illogical and inconsistent

20   with the given instructions.

21         Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

22   petition as to this claim.

23   26.   Due Process of Law:  Erroneous Jury Instructions as to Loss of the Razor Blade

24         The court also gave the jury the instruction CALJIC 2.11, explaining "[n]either side is

25   required to produce all objects or documents mentioned or suggested by the evidence."  (Lodgment

26   12 at 452.)  Petitioner claims this instruction improperly relieved the prosecution of its burden to

27   prove all elements of the offense of possession of the razor blade beyond a reasonable doubt.

28   //

1      <u>State Court Proceedings</u>

2      Petitioner did not raise this claim in his appeal or in his petition for writ of habeas corpus to

3 the California Supreme Court.  Therefore, the claim is not exhausted and may only be denied if it is

4 "perfectly clear" it has no merit.

5      <u>Magistrate Judge's Report</u>

6      The clearly-established federal law on jury instructions, correctly identified by the

7 magistrate judge, is that petitioner must show the challenged jury instruction "so infected the entire

8 trial that the resulting conviction violates due process."  <u>Estelle</u>, 502 U.S. at 71-72.  Because the

9 razor blade's production at trial was not an element of count three, the magistrate judge

10 recommended denying petitioner's claim.

11      <u>Petitioner's Objections</u>

12      Petitioner objects that this jury instruction relieved the prosecution of its burden to prove the

13 razor blade was sharp.  (Objections Pt. 3 at 7 & 20.)  The prosecution, however, presented evidence

14 as to the "sharpness" element through testimony a razor blade was found.  Petitioner's argument

15 "sharpness" could only be proven by production of the contraband item in question is meritless.

16 Petitioner also objects that CALJIC 2.11 should not have been given because it "is not applicable if

17 the evidence discloses a willful suppression of evidence."  (Objections Pt. 3, Ex. B at 50.)  Because

18 there is no evidence the loss of the razor blade was willful, the jury instruction was not erroneous.

19      Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

20 petition as to this claim.

21 27.    <u>Due Process of Law:  Erroneous Jury Instructions Regarding Evidence on Separate Counts</u>

22      Petitioner claims the jury believed it could consider evidence from one count when

23 considering the other counts.  Although the court instructed the jury to consider the evidence as to

24 each count separately (CALJIC 17.02[8]), petitioner claims the jury was confused by two additional

25

26

27 ———————————

28       [8]The court directed the jury that "[e]ach count charges a distinct crime.  You must decide each Count separately.  The defendant may be found guilty or not guilty as to any or all of the crimes charged.  Your finding as to each Count must be stated in a separate verdict."  (Lodgment 12 at 466.)

1   instructions, CALJIC 3.30[9] and 3.31.[10]  Those instructions included in the elements of each count

2   the "union or joint operation of act or conduct" with mental state.  CALJIC 3.30 applied to counts

3   two and three, the general intent crimes, and CALJIC 3.31 applied to counts one and four, the

4   specific intent crimes.  Petitioner claims the jury believed the "union" element allowed it to apply

5   evidence from one count to another.

6          State Court Proceedings

7          Petitioner did not raise this claim in his appeal or in his petition for writ of habeas corpus to

8   the California Supreme Court.  Therefore, the claim is not exhausted and may only be denied if it is

9   "perfectly clear" it has no merit.

10         Magistrate Judge's Report

11         The magistrate judge recommends the Court deny this claim.  The magistrate judge found

12  no reasonable probability the jury did not understand CALJIC 3.30 applied to both counts two and

13  three, but the evidence was nonetheless to be considered separately for those counts.  There is also

14  no reasonable probability the jury believed CALJIC 3.31 directed the jury to consider the evidence

15  on counts one and four in combination, rather than follow the instruction to consider the evidence

16  on each count separately.  Both CALJIC 3.30 and 3.31 are clear that the "union or joint operation"

17  must exist as to the conduct and the mental state of each separate count.  The magistrate judge

18  concluded the instructions did not imply the evidence of one count is applicable to another count.

19  //

20  //

21

22         [9]The jury was instructed:
               In the crimes charged in Counts Two, Assault with a Deadly Weapon, and Three, Possession of a Sharp
23         Instrument in a Penal Institution, there must exist a union or joint operation of act or conduct and general
           criminal intent.  General criminal intent does not require an intent to violent the law.  When a person
24         intentionally does that which the law declares to be a crime, he is acting with general criminal intent,
           even though he may not know his act or conduct is unlawful.
25  (Lodgment 12 at 459.)

26         [10]The court told the jury:
               In the crimes charged in Counts One and Four, there must exist a union or joint operation of act or
27         conduct and a certain specific intent in the mind of the perpetrator. Unless the specific intent exists the
           crime to which it relates is not committed.  The specific intent required is included in the definitions of
28         the crimes set forth elsewhere in these instructions.
    (Lodgment 12 at 460.)

1    Petitioner's Objections

2        Petitioner objects he did not knowingly possess the blade, the only evidence he did was

3   impermissible propensity evidence, and thus it is impossible to know why the jury concluded he

4   was guilty.  (Objections Pt. 3 at 25-27.)  The objections do not explain how CALJIC 3.30 and

5   CALJIC 3.31 could have potentially mislead the jury.  The Court agrees with the magistrate judge

6   that the instructions were not confusing and there is no reasonable probability the jury applied the

7   instructions in a manner which violated the Constitution.

8        Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

9   petition as to this claim.

10  28.    Ineffective Assistance of Counsel: Failure to Propose Jury Instructions

11       Petitioner claims trial counsel was ineffective by failing to propose a jury instruction on

12  third party culpability for counts one, two, and three and an antecedent threat instruction as to count

13  four.

14       State Court Proceedings

15       Petitioner did not raise this claim in his appeal or in his petition for writ of habeas corpus to

16  the California Supreme Court.  Therefore, the claim is not exhausted and may only be denied if it is

17  "perfectly clear" it has no merit.

18       Magistrate Judge's Report

19       The magistrate judge correctly identified the clearly-established federal law regarding

20  ineffective assistance of counsel contained in Strickland, 466 U.S. at 687.  The Report concluded

21  petitioner had not demonstrated these instructions would have been relevant or that any available

22  facts or reasonably obtainable facts supported their inclusion.

23       Petitioner's Objections

24       Petitioner states sufficient evidence existed to support a third party culpability instruction

25  because the evidence linked Espinoza to the attack on Cornejo and another inmate, Sukon, testified

26  he gave petitioner the legal pad without petitioner knowing the razor blade was hidden inside.

27  (Objections Pt. 3 at 28-29.)  Even if the instruction had been factually supported, petitioner cannot

28  show prejudice because the jury rejected that evidence in finding petitioner guilty.  Petitioner also

1  argues there was sufficient evidence to support an antecedent threat instruction because two

2  inmates testified Bradburn threatened petitioner, and petitioner did not threaten Bradburn.  (Id. at

3  30.)  While it is not clear what petitioner means by "antecedent threat instruction," petitioner

4  appears to be arguing the jury should have been instructed to find any threat made by petitioner was

5  provoked.  (Id.)  Since petitioner's defense was that he had not made any such threat, this proposed

6  instruction would have been inconsistent with the theory of the case and Ulovec's failure to request

7  it a reasonable tactical decision.  See Turk v. White, 116 F.3d 1264, 1267 (9th Cir. 1997)

8  (concluding attorney had no duty to investigate an alternative defense directly contradicting the

9  reasonably selected primary defense). Moreover, petitioner has not shown prejudice in the form of a

10 reasonable probability the jury would have acquitted on count four if such an instruction had been

11 given.

12      Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

13 petition as to this claim.

14 29.      Due Process of Law:  Trial Court's Denial of Proposed Instruction

15      Petitioner claims the trial court erred in rejecting a proposed jury instruction directing the

16 jury to consider the "obvious 'fact' the authorities and the prosecution were in collusion, willfully

17 suppressing the evidence related to Count Three." (Petition at 84.)  Petitioner presented this claim

18 in his petition for writ of habeas corpus to the California Supreme Court.

19      Magistrate Judge's Report

20      The magistrate judge correctly identified the clearly-established law regarding failure to

21 give a requested jury instruction.  Petitioner must show the failure to give the instruction "so

22 infected the entire trial that the resulting conviction violate[d] due process."  Henderson v. Kibbe,

23 431 U.S. 145, 154 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  The conviction

24 violated due process if there is a reasonable likelihood the jury applied the given instructions in a

25 way that violated the Constitution.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).   In this case,

26 because there was no evidence showing the loss of the razor blade was willful, the magistrate judge

27 recommended the claim be denied.

28 //

1    Petitioner's Objections

2    Petitioner objects that Garcia's testimony was not credible because it contained

3    contradictions as to how the razor blade was lost.  (Objections Pt. 3 at 32.)  After carefully

4    reviewing Garcia's testimony, the Court sees no material inconsistencies.  (Lodgment 12 at 262-64,

5    272-74.)  Petitioner continues to assert that loss of any evidence must have been in bad faith.  The

6    Court will not adopt such a presumption.  Petitioner also objects that bad faith can be inferred from

7    the government's failure to disclose the loss of the blade until the time of trial.  Because the loss of

8    the blade was not potentially exculpatory information (see petitioner's <u>Brady</u> claim, <u>supra</u>), the

9    failure to disclose it does not indicate bad faith on the part of the prosecution.

10    Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

11    petition as to this claim.

12    30.    <u>Due Process of Law:  Use of Petitioner's 1984 Prior as a Strike During Sentencing</u>

13    Petitioner also claims his due process rights were violated by the trial court's use of a 1984

14    prior as a strike for purposes of the Three Strikes Law.  At the second part of petitioner's bifurcated

15    trial, the jury received evidence petitioner had previously committed two violent assaults, one in

16    1984 and one in 1989.  Petitioner claims that as part of the plea agreement he entered into in 1984,

17    the great bodily injury allegation in this assault charge was dropped.  As a result, petitioner argues

18    the use of the 1984 prior as a prior violent felony is a violation of contract principles and collateral

19    estoppel.

20    State Court Proceedings

21    Petitioner raised this claim in his state court appeal.  The California Court of Appeal denied

22    the claim.  The court reviewed the transcript of the preliminary hearing on the 1984 charge, which

23    showed:

24    the victim and two other witnesses testified petitioner used a baseball bat to beat the
      victim and inflict serious injuries on him, including a broken nose, lacerations on his

25    nose requiring five stitches, bruises to his body and forehead, and numbness on parts
      of his face.

26
27    (Lodgment 3 at 50.)  The court applied <u>People v. Reed</u>, 13 Cal. 4th 217 (1996), in which the

      California Supreme court held preliminary hearing transcripts could be used to support a finding a
28
      prior conviction was a violent felony, and <u>People v. Blackburn</u>, 72 Cal. App. 4th 1520, 1526-31

1   (1999), which rejected the argument collateral estoppel prevented the prosecution from proving

2   allegations in a later trial which had been dismissed pursuant to a plea agreement.  The appellate

3   court thus rejected petitioner's arguments the use of the 1984 prior was a violation of contract

4   principles or collateral estoppel.

5        <u>Magistrate Judge's Report</u>

6        The magistrate judge recommended the Court deny this claim for failure to present a

7   cognizable federal claim.  The Report concluded petitioner only alleges the use of the prior was a

8   violation of state law, rather than federal law or the federal Constitution.  While petitioner makes a

9   cursory reference to the due process clause, the magistrate judge found this reference insufficient to

10  state a claim.

11       <u>Petitioner's Objections</u>

12       Petitioner objects pro se pleadings are to be construed liberally and the Court should not

13  dismiss this claim for failure to plead a federal claim.  (Objections Pt. 3 at 36.)  Petitioner also

14  argues his claim should be construed liberally because the Court dismissed his first petition, which

15  was over 300 pages long, and required him to be more succint.  (<u>Id.</u> at 36-37.)  Nowhere in

16  petitioner's 100-page amended petition, 150-page traverse, or 150-page objections does petitioner

17  remedy the fundamental defect present by this claim.  Petitioner merely asserts the use of the 1984

18  prior violated contract principles and California state law and sets out no facts supporting a federal

19  claim.

20       Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

21  petition as to this state law claim.

22  **31.**   <u>Ineffective Assistance of Counsel: Ulovec's Failure to Challenge Use of the 1984 Prior</u>

23       Petitioner claims trial counsel was ineffective in failing to challenge the use of the 1984

24  prior as a "strike" under the Three Strikes Law.  Specifically, petitioner claims Ulovec should have

25  objected to the use of the 1984 prior because the plea agreement transcripts had been destroyed,

26  objected to the amended information regarding the 1984 prior, objected to the admission of the

27  preliminary hearing transcripts, and objected to the jury instruction elevating the prior to a serious

28  felony for strike purposes.

1      <u>State Court Proceedings</u>

2         Petitioner did not raise this claim in his appeal or in his petition for writ of habeas corpus to

3 the California Supreme Court.  Therefore, the claim is not exhausted and may only be denied if it is

4 "perfectly clear" it has no merit.

5      <u>Magistrate Judge's Report</u>

6         The magistrate judge again correctly identified the clearly-established federal law regarding

7 ineffective assistance of counsel as stated by the Supreme Court in <u>Strickland</u>.  The Report

8 recommended the Court deny petitioner's claim for failure to show prejudice.  Because the record

9 reflected the 1984 assault offense involved both personal infliction of great bodily injury and

10 personal use of a dangerous or deadly weapon, the trial court properly considered the 1984 assault

11 under California's Three Strikes Law.[11]   The California Court of Appeal held petitioner's "1984

12 conviction . . . was properly considered a strike under the three strikes law and the trial court did

13 not err by refusing to strike that allegation."  (Lodgment 3 at 53.)  Accordingly, the magistrate

14 judge recommended the Court find petitioner cannot establish defense counsel was ineffective or

15 that petitioner suffered any prejudice.

16      <u>Petitioner's Objections</u>

17         Petitioner objects his 1984 prior should not have been considered a prior serious felony.

18 (Objections Pt. 3 at 38-40.)  The California Court of Appeal, however, rejected this argument, and

19 the Court finds the state court's conclusion is well supported by the record and California law.

20 Petitioner also argues reasonable counsel would have vigorously fought the use of the 1984 prior

21 because it was the only possible defense to petitioner's sentencing under the Three Strikes Law.

22 (<u>Id.</u> at 40.)  Again, because petitioner was not prejudiced by counsel's failure to pursue a futile

23 defense, petitioner does not meet the <u>Strickland</u> standard.

24         Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the

25 petition as to this claim.

26 _____

27       [11]In reaching this conclusion, the magistrate judge considered the California decisions which were applied by the state appellate court. <u>People v. Reed</u>, 13 Cal. 4th 217, 221 (1996) (use of prior conviction as serious felony upheld where

28 preliminary hearing transcript showed defendant personally used a deadly weapon in previous assault, despite plea agreement and no information allegation or finding in the prior case that defendant personally used a dangerous weapon).

                   04cv1726

1  32.    Ineffective Assistance of Appellate Counsel

2        Petitioner claims his appellate lawyers were ineffective in failing to argue all of the issues

3  raised by this federal petition.  Petitioner raised a similar claim in his habeas petition to the

4  California Supreme Court, which the court summarily denied.

5        Magistrate Judge's Report

6        The magistrate judge correctly identified the <u>Strickland</u> standard as the clearly-established

7  federal law regarding effective assistance of counsel.  The magistrate judge recommended that

8  because none of the claims raised in the instant petition are meritorious, the Court find petitioner

9  has not established he was prejudiced by his attorneys' failure to argue the claims.

10        Petitioner's Objections

11        Petitioner states his claims were meritorious and thus he was prejudiced by his appellate

12  counsel's failure to raise those claims.  (Objections Pt. 3 at 44.)  Because the Court agrees with the

13  magistrate judge that all claims in fact should be denied, petitioner cannot show prejudice.

14  Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the petition as

15  to this claim.

16  Summary

17        In summary, petitioner has not established that the California Court of Appeal or California

18  Supreme Court's decisions denying his constitutional claims were contrary to, or an unreasonable

19  application of, clearly-established federal law.

20  Certificate of Appealability

21        A petitioner complaining of detention arising from state court proceedings must obtain a

22  certificate of appealability to file an appeal of the final order in a federal habeas proceeding.  28

23  U.S.C. § 2253(c)(1)(A) (2007).  The district court may issue a certificate of appealability if the

24  petitioner "has made a substantial showing of the denial of a constitutional right."  <u>Id.</u> § 2253(c)(2).

25  To make a "substantial showing," the petitioner must "demonstrat[e] that 'reasonable jurists would

26  find the district court's assessment of the constitutional claims debatable[.]'"  <u>Beaty v. Stewart</u>, 303

27  F.3d 975, 984 (9th Cir. 2002) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  Petitioner

28  has not made a "substantial showing" as to any of the thirty-two claims raised by his petition, and

1 | thus the Court sua sponte denies a certificate of appealability.

2

3 | **CONCLUSION**

4 |      Accordingly, the Court hereby (1) ADOPTS the magistrate judge's Report; (2) REJECTS

5 | petitioner's objections; (3) DENIES the petition for writ of habeas corpus; and (4) DENIES a

6 | certificate of appealability.

7

8 | **IT IS SO ORDERED.**

9

10 | **DATED:  March 12, 2008**

11 | **IRMA E. GONZALEZ, Chief Judge**

12 | **United States District Court**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28